# 16-1958-cv

## United States Court of Appeals
### for the
## Second Circuit

MOHAMMAD LADJEVARDIAN, LAINA CORP., PENRIN SERVICES B.V.I.,
LAYMAN B.V., BAKA N.V., TROYTON CONSULTANTS LTD., SPHINX
OVERSEA LTD., BLUEVIEW HOLDINGS LTD., JAHANSOOZ SALEH,

*Plaintiffs-Appellants,*

MEHDI SHARIFAN, KAMBIZ ANSARI, TIAL INC. B.V.I., MOZAFAR JANDAGHI,
FARIDEH JANDAGHI, MOWDAR CORP.,

*Plaintiffs,*

– v. –

THE REPUBLIC OF ARGENTINA,

*Defendant-Appellee,*

THE BANK OF NEW YORK MELLON,

*Non-Party-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF and SPECIAL APPENDIX
## FOR PLAINTIFFS-APPELLANTS

ANDERSEN SLEATER LLC
*Attorneys for Plaintiffs-Appellants*
1345 Avenue of the Americas
2nd Floor, Suite 210
New York, New York 10105
(212) 878-3697

*Of Counsel:*
  JESSICA SLEATER

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for Plaintiffs-Appellants states that the following Plaintiffs-Appellants are or may be considered corporate parties:

Laina Corp., Penrin Services B.V.I., Layman B.V., Baka N.V., Blueview

Holding Ltd., Troyton Consultants, and Sphinx Overseas Ltd.

To the best of my information and belief, those entities do not have parent companies and no publicly held corporation owns 10% or more of their stock or equity.

*/s/ Jessica J. Sleater*

Jessica J. Sleater

Attorney for Plaintiffs-Appellants

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................1

JURISDICTIONAL STATEMENT ...................................................4

STATEMENT OF THE ISSUES.........................................................5

STATEMENT OF THE CASE............................................................5

STATEMENT OF THE FACTS .........................................................7

   A. Background...........................................................................7

   B. The Bondholders' Motion and The District Court's Decision ......................10

SUMMARY OF ARGUMENT .......................................................11

STANDARD OF REVIEW ............................................................14

ARGUMENT ..................................................................................14

   A. The District Court Lacked a Proper Basis in Law and Fact for Denying the Bondholders' Motion.................................................14

      1.  Argentina has an Interest in Proceeds .......................................17

      2. Argentina is Entitled to Possess the Proceeds............................22

      3. The Bondholders' Interests Are Superior to BNYM ................24

   B. The Proceeds Are Not Immune under the FSIA ...........................27

   C. The District Court Impermissibly Denied Discovery....................31

CONCLUSION ..............................................................................33

# TABLE OF AUTHORITIES

## CASES

*Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 Fed.Appx.16 (2d Cir. 2014) (summary order)........................................................................... 14, 32, 33

*Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120 (2d Cir. 2009) ................................................................................................ 14, 30

*Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838 (2d Cir.1991) ............ 16, 23, 24, 25

*Dussault v. Republic of Argentina*, 616 Fed. Appx. 26 (2d Cir. 2015)(summary order)....................................................................................... 23, 24, 26, 27

*EM Ltd. v. Banco Central de la Republica Argentina*, 800 F.3d 78 (2d Cir. 2015) .....................................................................................21

*EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007) ............... 14, 21, 29

*EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012) .......... 14, 27, 31, 32

*Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75 (2d Cir. 2014) .....................................................................................32

*JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587 (S.D.N.Y. 2011) ........................................................................... 12, 15, 17, 21

*N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 717 F.3d 266 (2d Cir. 2013)..................................................................................15

*NML Capital, Ltd. v. Republic of Argentina*, 680 F.3d 254, 260 (2d Cir. 2012) ....29

*Republic of Argentina v. NML Capital*, 134 S. Ct. 2250 (2014) ............... 14, 31, 32

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992)........................ 13, 28

*Rossini v. Republic of Argentina*, 453 Fed. Appx. 22 (2d Cir. July 1, 2011)(summary order)...........................................................................33

*S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 CIV. 8849 PKC, 2010 WL 415927
(S.D.N.Y. Oct. 6, 2010) ................................................................ 16, 17, 22, 25

## STATUTES

28 U.S.C. § 1330 ...............................................................................................4

28 U.S.C. § 1292(a)(1) ......................................................................................4

28 U.S.C. § 1331 ...............................................................................................4

28 U.S.C. § 1603 ...............................................................................................4

28 U.S.C. § 1605 ...............................................................................................4

28 U.S.C. § 1610 ...................................................................................... 14, 24

28 U.S.C. § 1291 ...............................................................................................4

Foreign Sovereign Immunities Act ("FSIA") .................................... passim

New York Debtor and Creditor Law § 278 ..................................................21

## RULES

Fed. R. Civ. P. 26 (b)(1) .................................................................................30

Fed. R. Civ. P. 69 (a) ......................................................................... 15, 18, 30

N.Y. C.P.L.R. § 5223 .......................................................................................30

N.Y. C.P.L.R. § 5225 ........................................... 3, 4, 15, 16, 18, 21, 23

N.Y. C.P.L.R. § 5230 ...................................................... 3, 4, 15, 16, 18

N.Y. C.P.L.R. § 5201 .......................................................................... 16, 21

## PRELIMINARY STATEMENT

The Plaintiffs-Appellants here are individual bondholders (the "Bondholders" or "Appellants") of the Republic of Argentina ("Argentina"), who are family members that hoped to use the interest from their bonds to support themselves, including the largest holder, who is in his nineties and disabled. They have held some of their bonds since before Argentina's default in 2001, and Argentina has failed to pay them anything since. In 2006, Appellants were forced to bring an action to enforce their rights under the bonds and were awarded judgments on June 15, 2007, for the face value of their bonds plus interest pursuant to the bonds' and statutory pre-judgment interest rates (the "Judgments").[1] A 19-25.

However, Argentina has continued, even now, to refuse to pay Appellants' Judgments, including the now accrued, significant post-judgment interest. The Bondholders brought their motion for an order for writ of execution and turnover order against Argentina and Bank of New York Mellon Corporation ("BNYM"), which is the subject of this appeal (the "Motion"), in an attempt to recover the money that they are rightfully owed in their long-outstanding Judgments for their bonds.

---

[1] Citation abbreviations in this brief are: "A" refers to pages of the Joint Appendix; "SPA" refers to pages of the Special Appendix.

1

In February 2016, Argentina announced a unilateral, public settlement offer to remaining bondholders of 150% of their principal, or if they held an injunction, 70% of their claim (the "Public Offer"), without having any communication or negotiation with individual bondholders, including Appellants. Argentina insists that Appellants are only entitled to 150% of the face value of their bonds because they did not have an injunction, which was not a significant difference to the exchange offers to bondholders in 2005 and 2010 after 15 years since its default. Even though Appellants have equal rights under their bonds to other bondholders and hold valid Judgments, Argentina agreed to pay other bondholders more than them, including as high as 70-79% of claims to some large fund bondholders. After some of the large fund bondholders agreed to settlements with Argentina, the district court, which this Court affirmed, agreed to lift injunctions that were in place prohibiting Argentina's access to the financial markets on April 13, 2016.

Soon thereafter, Argentina began taking steps in April 2016 toward making a $16.5 billion commercial, private bond offering ("April 2016 Bond Offering") in order to raise funds for Argentina, including an anticipated $10.5 billion in proceeds (the "Proceeds") to be used to pay Argentina's debts to bondholders. A 93-181. Argentina's government officials traveled to the United States to secure American investors' participation in the April 2016 Bond Offering generated through U.S. financial institutions. A 93 (listing U.S. financial institutions

2

involved). According to documents first filed in opposition to the Motion by
Argentina, Argentina agreed in a Trust Agreement that BNYM, in the U.S., would
receive the Proceeds generated in the first phase of the April 2016 Bond Offering
through participating U.S. financial entities for Argentina. A 184-200. The
Proceeds are to be paid through BNYM, at Argentina's direction and liability, first
to beneficiary bondholders, like Appellants, in consideration for them agreeing to
settle their claims against Argentina, and any remaining amounts would be
returned to the Central Bank of the Republic of Argentina (the "Central Bank") on
or before October 22, 2016. *Id*. Argentina and BNYM have not indicated that the
Proceeds have been moved outside of the U.S. According to Argentina, the second
phase of the 2016 Bond Offering occurred entirely in Argentina beyond the
jurisdiction of the U.S. and its courts. On April 22, 2016, Argentina indicated to
the district court that it had consummated the April 2016 Bond Offering and made
full payment with some of the Proceeds to certain bondholders, who agreed to
settlements with Argentina by February 29, 2016. A 75-76.

On April 29, 2016, Appellants filed their Motion. The Bondholders' Motion
appropriately employed the legal mechanism, pursuant to Federal Rules of Civil
Procedure 69 (a) and New York law, New York Civil Practice Law and Rules
("CPLR") §§ 5225 and 5230, to obtain Argentina's Proceeds to satisfy their
Judgments in the hands of a third party, BNYM. According to the Trust

Agreement's own admissions, Argentina retains its interest in and is entitled to the

Proceeds, and the Bondholders have a superior interest to them over BNYM, who

holds them for their benefit and acts as Argentina's agent in paying its creditors. A

184-200. Furthermore, the Proceeds are not immune from execution and the

turnover orders under the Foreign Sovereign Immunities Act (the "FSIA"). They

are part of the April 2016 Bond Offering in the U.S. through U.S. entities, and are

now being paid to satisfy Argentina's debts to its bondholders in the U.S.

Argentina, acting as a private party, is participating in these recognized

commercial activities concerning the Proceeds in order to raise funds and pay its

debts. The Bondholders also requested to pursue discovery from Argentina and the

U.S. financial entities involved in the April 2016 Bond Offering, as they relate to

potentially attachable assets, the Proceeds, which courts routinely, liberally grant.

The district court's denial of the Bondholders' Motion was legally improper and an

abuse of discretion, and should be reversed.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. §§ 1330, 1331, 1603 and

1605. It also had ancillary jurisdiction pursuant to FRCP 69 (a) and CPLR §§ 5225

and 5230. The order appealed from was entered on May 26, 2016, and Appellants

timely filed their notice of appeal of the District Court's decision on June 15, 2016.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 1292(a)(1), the collateral order doctrine and pendent appellate jurisdiction.

## STATEMENT OF THE ISSUES

Did the District Court err in denying the Motion for a writ of execution and turnover order against Argentina and BNYM, when Argentina has an interest in and is entitled to the Proceeds and the Bondholders' interest in the Proceeds is superior to BNYM?

Did the District Court err in finding that the Proceeds are immune under the FSIA, when Argentina is using them for commercial activity as part of the April 2016 Bond Offering to pay bondholders' debts in the U.S.?

Did the District Court err in denying the Bondholders' request for discovery relating to the 2016 Bond Offering and its Proceeds being used to pay Argentina's debt to bondholders in the U.S.?

## STATEMENT OF THE CASE

The Bondholders initially began to purchase bonds from Argentina in the 1990s, pursuant to the 1994 Fiscal Agency Agreement ("FAA"), which waived Argentina's immunity to bondholder actions in the U.S. under New York law and included a *pari passu* clause entitling the Bondholders to equal treatment in payments to other bondholders. After Argentina defaulted in 2001 and refused to pay them anything, including interest owed that they hoped to use to help cover

their living expenses, the Bondholders were forced to sue Argentina for breach of
their agreement relating to the bonds in 2006 in the Southern District of New York
to recover their principal and interest owed on their bonds. They were granted
Judgment in their favor in 2007; however, Argentina has refused to pay the
Bondholders what they are owed and avoided numerous bondholders' enforcement
efforts. A 19-25.

After this Court affirmed the district court's decision to lift the injunctions
brought by bondholders, which effectively barred Argentina's access to the
financial markets, Argentina pursued the April 2016 Bond Offering in the U.S. to
raise multi-billions of dollars for itself through U.S. investors and financial entities.
These Proceeds were deposited in BNYM located in the U.S.  BNYM is directed
by Argentina to first pay Argentina's debts bondholders pursuant to settlements
between bondholders and Argentina of claims against Argentina. Any remaining
amounts not paid to bondholders will be returned to the Central Bank on or before
October 22, 2016. Argentina and BNYM have not indicated that the Proceeds have
been sent back to Argentina.

Argentina has unilaterally, as it has done since its default in 2001, dictated
what it will and will not pay to the Bondholders and refuses even now to genuinely
negotiate with them. It insists that they are only entitled to 150% of the face value
of their bonds, instead of the full value of their enforceable Judgments and the

6

post-judgment statutory interest that they are owed. The Public Offer does not represent a dramatic change from the exchange offers to bondholders in 2005 and 2010. However, Argentina agreed to pay significantly more to other bondholders than it is offering to Appellants, despite the fact that they also hold the same bonds with a *pari passu* clause entitling them to equal payment. The Bondholders brought their Motion in an effort to recover the Proceeds in the U.S. at BNYM to satisfy their long-outstanding Judgments.

## STATEMENT OF THE FACTS

### A.    Background

In the 1990s, Argentina issued bonds, including to Appellants, pursuant to the FAA that contained a *pari passu* clause that requires equal treatment in payments to bondholders. Argentina defaulted on its payments to bondholders, including to Appellants, in 2001, and has not paid them what they are legally entitled to since then. In 2006, Appellants were forced to bring an action to enforce their rights under the bonds and were awarded Judgments on June 15, 2007, for the face value of their bonds plus interest pursuant to the bonds' and a statutory pre-judgment interest rate. However, since that time, Argentina has refused to pay Appellants' Judgments, including the now accrued, significant post-judgment interest.

In February 2016, Argentina announced its unilateral Public Offer to remaining bondholders of a standard offer for 150% of their principal, or if they held an injunction, 70% of their claim, without having any communication or negotiation with individual bondholders, including Appellants. Appellants did not obtain an injunction, and therefore according to Argentina, are only entitled to 150% of their principal, which is similar to the exchange offers in 2005 and 2010 to bondholders even after 15 years since its default. However, Argentina agreed to pay other bondholders more than this, in violation of the *pari passu* clause, with its payments of 70% to as much as 79% of claims to some large fund bondholders. In connection with some of these large fund bondholders agreeing to settlements with Argentina, the district court, which this Court affirmed, agreed to lift injunctions that were in place prohibiting Argentina's access to the financial markets on April 13, 2016. Soon thereafter, Argentina began taking steps in April 2016 toward making a $16.5 billion private commercial bond offering in order to raise funds for Argentina, including an anticipated $10.5 billion in Proceeds to be paid to bondholders. Argentina's government officials traveled to the U.S. to secure American investors' participation in the April 2016 Bond Offering.

According to documents first filed in opposition to the Motion by Argentina, Argentina agreed in a Trust Agreement with BNYM that BNYM would receive in the U.S., on Argentina's behalf, the Proceeds generated in the first phase

through participating U.S. financial entities. The Proceeds are to be paid first, at Argentina's direction, through BNYM to beneficiary bondholders, which would also include Appellants, in consideration of settling their claims against Argentina, and any remaining amounts would be returned to the Central Bank on or before October 22, 2016. The second phase of the 2016 Bond Offering occurred entirely in Argentina beyond the jurisdiction of the U.S. courts. On April 22, 2016, Argentina indicated to the district court that it had consummated the April 2016 Bond Offering and made full payment with some of the Proceeds to certain bondholders, who agreed to settlements with Argentina before February 29, 2016.

Now flush with tens of billions in capital from the April 2016 Bond Offering and other local bond offerings thereafter, Argentina's officials continue to tout to investors around the world that Argentina has one of the lowest debt per capita in the world since it has resolved its creditor disputes - including with its bondholders. However, it ignores the fact that many individual bondholders, like Appellants, have been left out in the cold with only its offer of a fraction of their enforceable Judgments, while other large fund bondholders were paid much more for their claims. Argentina has no excuse now for not paying the Bondholders what they are legally owed pursuant to their Judgments.

9

**B.     The Bondholders' Motion and The District Court's Decision**

On April 29, 2016, Appellants filed their Motion for writ of execution and turnover order against Argentina and BNYM, which held in the U.S. the Proceeds for Argentina generated through U.S. financial institutions, in order to satisfy their long-outstanding Judgments based on publicly reported information about the private April 2016 Bond Offering. A 93-181. The Bondholders' Motion invokes the recognized legal mechanism pursuant to federal and New York law to seek Argentina's non-immune Proceeds in the hands of third-party, BNYM, to satisfy their Judgments.

On May 26, 2016, the district court denied Appellants' Motion. SPA 1-12. It ruled that Argentina did not have an interest in the Proceeds and was not entitled to possess them based on the information Argentina and BNYM presented relating to the Trust Agreement. The court ignored the traditional relationship that exists when an entity deposits its funds into a bank in order for it to make payments on its behalf, as detailed in the Trust Agreement. In the fact, the Trust Agreement provides that BNYM hold the Proceeds for Argentina and pay them at Argentina's direction to its creditor-bondholders, while BNYM has no interest to them and is not entitled to payment from them. A 187-92. The district court also found that Appellants' interest was not superior to other creditors, even though the reason for the April 2016 Bond Offering was to raise money for Argentina so it could pay its

10

bondholders, the Trust Agreement specifies that beneficiary bondholders are to be paid first ahead of the Central Bank. A 184, 186. The court also failed to consider the fact that Bondholders have equal rights to equal payments under the bonds to other bondholders and that BNYM only holds the Proceeds in trust for the bondholder beneficiaries and pays them as an agent of Argentina.

The district court also determined based on the FSIA that the Proceeds were immune from execution and attachment, despite being recognized commercial activity in the U.S. SPA 10-11. Finally, the district court denied Appellants' request for discovery finding that it would not reasonably relate to the discovery of attachable assets, contrary to legal authority from the Supreme Court and this Court that provide for broad discovery that is not barred by the FSIA. SPA 11-12. Appellants timely filed their notice of appeal of the District Court's decision on June 15, 2016.

## SUMMARY OF ARGUMENT

The District Court abused its discretion in making clearly erroneous factual and legal findings in denying the Bondholders' Motion. Argentina clearly has an interest in the Proceeds because the Proceeds were generated for it from the April 2016 Bond Offering and are being paid by it to satisfy its debt owed to bondholders for release of their claims against Argentina, which is the reason for the Trust Agreement. BNYM is merely the trustee and acting as Argentina's agent,

not a creditor entitled to the Proceeds, subject to Argentina's indemnification for its actions taken on Argentina's behalf, holding and paying the Proceeds to Argentina's bondholders, as Argentina directs. *See JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 592 (S.D.N.Y. 2011) (granting creditor's action for writ of execution and turnover order against debtor's accounts held at third-party bank).

Argentina's effort to shield the Proceeds from actions of bondholders, including the present Motion, through the Trust Agreement - maneuvers it has decades of experience doing to prevent bondholders from fulfilling their debts - further demonstrates Argentina's continued interest and entitlement to the Proceeds. It states that BNYM is only to maintain and pay the Proceeds, as directed by Argentina in Argentina's interest. A 184-98. The Trust Agreement also expressly states that the bondholders' interest, including Appellants who would qualify for them under the Public Offer and through the *pari passu* clause of their bonds, is superior to BNYM's as the trustee for the bondholder beneficiaries. A 184-87. The Central Bank is only to receive any remaining amounts not paid to bondholders on or before October 22, 2016, indicating that its interest certainly does not trump the Bondholders' either. A 186. Also the Central Bank as a participant and recipient of the revenue generated through the second phase of April 2016 Bond Offering may in fact be serving as an alter-ego or agent of

12

Argentina with its receipt of the Proceeds not paid to bondholders. Because of this, Argentina might have a further interest and right to possess them pursuant to the Trust Agreement. A 184-87 (the Central Bank is to receive the Proceeds not paid to bondholders).

Immunity claims under the FSIA are reviewed by this Court *de novo*. Bond offerings that raise revenue or proceeds and the payment of the debt to bondholders are recognized commercial activity. Argentina acted as a private entity in the April 2016 Bond Offering reaping its Proceeds. It is now continuing in this role as it pays the long-outstanding debts to its bondholders in order for them to release their claims against it. Argentina does not dispute that the April 2016 Bond Offering and the Proceeds at BNYM being paid to bondholders to satisfy their debts occurred in the U.S. The FSIA does not provide immunity to the Proceeds from the Bondholders' execution and turnover order. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 615-16 (1992) (issuance and payment of debt in connection with bonds offering are commercial activity not immune under the FSIA).

The District Court abused its discretion in denying the Bondholders' request for discovery relating to the April 2016 Bond Offering, and in particular, the Proceeds held at BNYM that are being paid to bondholders to satisfy their debts for release of their claims against Argentina. Even if the Proceeds are not available to satisfy the Judgments, the requested discovery relating to Argentina's capital-

raising activities is reasonably calculated to lead to attachable assets. The Supreme Court and this Court have found that this type of discovery should be routinely and broadly granted. *See Republic of Argentina v. NML Capital*, 134 S. Ct. 2250, 2257-58 (2014) (recognizing that the FSIA and nothing else bars discovery of Argentina's assets); *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 Fed.Appx.16, 17-18 (2d Cir. 2014) (summary order) (following *NML*).

## STANDARD OF REVIEW

Denial of a motion for a writ of execution and attachment is reviewed for abuse of discretion. *See EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 472 (2d Cir. 2007). The district court abuses its discretion if it applies legal standards incorrectly, relies upon clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law. *See id*.

Consideration of whether property is immune from execution or turnover under the FSIA is reviewed *de novo*. *See Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009).

Denial of a request for discovery is reviewed for abuse of discretion. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012).

## ARGUMENT

A.    **The District Court Lacked a Proper Basis in Law and Fact for Denying the Bondholders' Motion**

14

Appellants moved pursuant to FRCP 69 (a), 28 U.S.C. § 1610(a) and (c) and CPLR §§ 5225(b) and 5230 for immediate writs of execution and an order directing Argentina and BNYM to turn over the Proceeds held in the U.S. to satisfy their long-outstanding Judgments. Rule 69(a) provides for money judgments to be enforced in accordance with the procedures of the state where the court is located, here New York. *See JW Oilfield,* 764 F. Supp. 2d at 592 (granting creditor's action for writ of execution and turnover order against debtor's accounts held at third-party bank).

CPLR § 5230(a) provides that a writ of execution be directed only at the property in which a named judgment debtor has an interest to be levied. CPLR § 5225(b) provides that a judgment creditor may commence a special proceeding:

> against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court ***shall require*** such person pay the money, or so much of it as is sufficient to satisfy the judgment to the judgment creditor.

(Emphasis added); *see N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 717 F.3d 266, 267 (2d Cir. 2013) (this Court recognized that CPLR § 5225(b) creates a procedural mechanism by which judgment creditors can enforce a money judgment against property of debtor in the possession or custody of a third party); SPA 4. Under § 5225(b), a judgment creditor must plausibly allege

15

first as a threshold that the judgment debtor "has an interest" in the property in the hands of the third party, and then, second make one of two findings: "either that the judgment debtor is 'entitled to the possession of such property,' *or* . . . that 'the judgment creditor's rights to the property are superior' to those of the party in whose possession it is." *Beauvais v. Allegiance Sec., Inc*., 942 F.2d 838, 840 (2d Cir. 1991) (quoting § 5225(b)); SPA 4. CPLR § 5201(b) also provides that judgments "may be enforced against any property, which could be assigned or transferred whether it consists of a present or future right or interest and whether or not it is vested."

Argentina and BNYM did not dispute that the Court has jurisdiction over them and that BNYM holds the Proceeds subject to the Motion. SPA 5. Argentina retains an interest in and is entitled to possess the Proceeds at BNYM, as they were raised for it and are being used to pay its debts at its direction through BNYM as its agent. A 184-98; *see S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 CIV. 8849 PKC, 2010 WL 4159276, at *3 (S.D.N.Y. Oct. 6, 2010) (citing cases) (recognizing that in granting a motion for a turnover order involving debtor's bank account, debtor's funds deposited in the bank were no longer his property and become the property of the bank). The Bondholders' rights as beneficiaries of the Proceeds, as stated by Argentina and designated in the Trust Agreement, are superior to BNYM. A 184-87, 191. For these reasons, the district court's denial of the Motion for

16

issuance of writs of execution and turnover order against Argentina and BNYM of the Proceeds should be reversed.

### 1.    <u>Argentina has an Interest in Proceeds</u>

As a threshold issue, under CPLR §§ 5225(b) and 5230 for a turnover or writ of execution order, a court must consider whether Argentina has an interest in the Proceeds that the Bondholders seek to satisfy their long-outstanding Judgments. Here, like any party that deposits its funds into a bank, Argentina retains an interest in the Proceeds - raised for it through the April 2016 Bond Offering to be paid to its creditors - even though they have become the property of BNYM through the Trust Agreement. *See JW Oilfield*, 764 F. Supp. 2d at 592 (recognizing debtor's interest in funds held at third-party bank); *Colonial Inv. Mgmt*., 2010 WL 4159276 at *3 (same). In fact, this recognized change in ownership is the reason that the procedure under Rule 69(a) for execution and turnover of the Proceeds is directed at third-party, BNYM, because the Court must determine what to direct BNYM, not Argentina, to do with them since they are in its possession. *See Colonial Inv. Mgmt*., 2010 WL 4159276 at *3. Argentina's interest in the Proceeds at BNYM is the same as any bank account holders' that may be subject to execution and turnover to satisfy the Bondholders' long-outstanding Judgments. *Id*.

Argentina, after over a decade and a half of experience avoiding payment to its bondholders, including Appellants, and executions and attachments on its

property to satisfy judgments against it, like the present Motion, has again engaged in an elaborate scheme - through the Trust Agreement - to do the same thing with the Proceeds before returning them to Argentina, beyond the U.S. court's jurisdiction, on October 22, 2016. A 184-98 (section 6(b) any remaining funds not paid to beneficiary bondholders are to be returned to the Central Bank in Argentina). Instead of considering the facts and reality of the relationship between Argentina and BNYM and the Trust Agreement's purpose to pay Argentina's debts with BNYM acting as its agent, the district court erroneously adopted Argentina's self-serving statements relating to the Trust Agreement to find that Argentina does not have an interest in the Proceeds to deny the Motion. SPA 6-7. If Argentina did not have an interest in the Proceeds, it could not then pay them, as it is doing, to its bondholders, on its own terms, for settlements of their claims against it because they would belong to BNYM. BNYM is not making the decision to pay Argentina's bondholders, and it has no interest in the Proceeds or their payment. In fact, if Argentina had no interest in the Proceeds, as the district court found, the Bondholders would be able to negotiate directly with BNYM for satisfaction of their Judgments and not be restricted to accept Argentina's Public Offer.

The Trust Agreement, itself, further emphasizes the fact that BNYM is only acting as Argentina's agent. BNYM received the Proceeds on Argentina's behalf and only pays them, as directed by Argentina, to Argentina's creditors, specifically

bondholders to satisfy Argentina's debt owed to them in order to receive a release

of their claims against Argentina. A 184-98. In fact, the Trust Agreement states:

> (i)    The Republic has entered into agreements in principle with
> those beneficial owners of defaulted Republic of Argentina bonds. . .

> (ii)    The Republic expects to issue new debt securities in the
> international capital markets (the "New Bonds"), from which certain
> proceeds [] will be used either (x) to fund a full settlement of all
> Settled Claims or (y) failing such full settlement, to be transferred to
> the Central Bank of Argentina ("BCRA") for application of such
> funds to the repayment of outstanding indebtedness of the Republic. . .

> (iii)    [BNYM] has agreed, on the terms and subject to the conditions
> of this Agreement, to receive the Proceeds on the closing date (the
> "Closing Date") of this issuance of the New Bonds, to hold those
> funds in trust for the benefit of the [bondholders] and to distribute
> those funds in accordance with terms of this Agreement;

A 184. Section 6(a) specifies that Argentina is to send bondholders its proposed

settlement with the amounts it will pay them through BNYM. A 186 ("It is

acknowledged and agreed by [BNYM] that the [settlement process] shall be carried

out as described in Appendix B of Schedule 5 hereto."), A 188 (section 9(a) "(v)

[BNYM] shall not be subject to, nor be required to comply with, any other

agreement to which the Republic is a party . . . (*other than in accordance with this*

*Agreement*. . .) (vii) "The Settlement Trustee shall not . . . be under any obligation

towards any Settling Claimant or any other Person, *other than the Republic*")

(emphases added). Argentina retains the right to amend the Trust Agreement and

waive its provisions if BNYM agrees. A 195 (section 13). Also if BNYM resigns

as settlement trustee, Argentina has the right to appoint a successor trustee. A 197 (section 22).

BNYM is also obligated to notify Argentina when it declines to take action under the Trust Agreement and may take action only after receiving written instructions from Argentina. A 187 (section 8 ("[BNYM] shall promptly give notice by facsimile or electronic transmission or other written communication satisfactory to the Republic of the existence of any Dispute."), A 189 (section 9(b) (iii) (BNYM may take action as Argentina's direction if it is offered satisfactory indemnity), (v) (BNYM must notify Argentina if it decides not to take action and take action upon written instructions from Argentina), (vii) (BNYM may take actions based on Argentina's written instruction), A 195 (section 11(e) (BNYM may rely upon instructions and directions given on behalf of Argentina)). Furthermore, in the Trust Agreement, Argentina agreed to indemnify BNYM for its actions taken on its behalf, which would not be necessary if BNYM was acting for itself. A 187-92 (*e.g.*, sections 8, 9(a)(ii)-(vii), 9(b)(v), (vii), (xi), 11(e)). BNYM is not obligated to take action on behalf of bondholders). Therefore, it is clear that the Proceeds were not raised for BNYM; BNYM receives no benefit from paying Argentina's creditors; and BNYM is not entitled to be paid from the Proceeds. A 191 (section (9)(d) (enumerating BNYM's compensation from Argentina). Instead, Argentina retains its interest in the Proceeds and their payment

to its bondholders through its instructions to BNYM, which it is obligated to follow.

Furthermore, under CPLR § 5201(b), Argentina may also maintain its future interest in the Proceeds through their transfer to the Central Bank. A 186 (section 6(b)). Although in some circumstances, this Court has found the Central Bank to be a separate entity to Argentina (SPA 7), here it participated on Argentina's behalf in the April 2016 Bond Offering and received the proceeds for Argentina. The transfer to the Central Bank in the Trust Agreement may in fact be a fraudulent conveyance, pursuant to New York Debtor and Creditor Law § 278, in order for Argentina to avoid any bondholders' executions on its Proceeds. The district court failed to consider the facts surrounding this situation and erred in finding that Argentina did not have a current or future interest in the Proceeds.

The district court erroneously relied on *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 476 n.13 (2d Cir. 2007). SPA 6. However, *EM* involved the Central Bank's funds held at the Federal Reserve Bank, not Argentina's Proceeds held at BNYM to pay its own debts. *Id*. at 476. By contrast, BNYM is not holding the Proceeds for its own account, like the Central Bank was in *EM*, it is holding them for Argentina to pay its bondholders' debts.[2] *See JW Oilfield*, 764 F. Supp. 2d at

---

[2] The district court also cited *EM Ltd. v. Banco Central de la Republica Argentina*, 800 F.3d 78, 99 (2d Cir. 2015) for the position that the Central Bank is a separate

592 (ordering turnover of debtor's funds held at third party bank); *Colonial Inv.*

*Mgmt.*, 2010 WL 4159276 at *3 (same). Because Argentina has a clear interest in

the Proceeds, consistent with the facts and law, the district court erred in denying

the Motion on this basis.

## 2. Argentina is Entitled to Possess the Proceeds

Since Argentina clearly satisfies the threshold determination of its interest in

the Proceeds, pursuant to the *Beauvais* analysis under CPLR § 5225(b) for a

turnover order, the Court must next consider if Argentina is entitled to possess

them, or alternatively, if it the Bondholders' interest in them is superior to BNYM.

Here, as with its interest in them, Argentina is entitled to possess the Proceeds that

in fact were raised for it through the April 2016 Bond Offering. Its entitlement is

further emphasized by the fact that Argentina is now paying out some of them,

through its agent BNYM, to bondholders to satisfy its debts to them for release of

their claims against it. A 184-87. Again, as any party that deposits its funds into a

third-party bank, Argentina continues to be entitled to possess the Proceeds and is

not now prohibited by any court order from doing so, as it previously was through

the court's injunctions against it and BNYM.

---

entity to Argentina under those circumstances. SPA 7. That decision instead
demonstrates the difference between the Central Bank's funds, in which Argentina
does not have an interest, and Argentina's Proceeds held at BNYM, in which
Argentina does.

The Trust Agreement clearly outlines Argentina's entitlement because it directs BNYM how and who to pay of its creditors and indemnifies BNYM for its actions. A 184-98. By contrast, Argentina can also direct BNYM that the Proceeds be paid elsewhere by a certain time, as it is already indicating it will do where any amounts not paid to bondholders, pursuant to settlements it agrees to, will be transferred "on or prior to October 22, 2016." A 186 (section 6(b)). Because BNYM is only a trustee, it cannot take the Proceeds for itself. *Cf. Beauvais*, 942 F.2d at 841 (remanding decision because lower court did not consider if debtor was entitled to possession of funds because an agreement with third party may have allowed third party to apply them to debtor's unpaid balance for services rendered to it or its customers).

The district court again failed to consider these facts concerning the relationship between Argentina and BNYM regarding the Proceeds and the noted language of the Trust Agreement showing Argentina's entitlement to possession of the Proceeds. It again only relied on Argentina's self-serving statements based on its attempt to avoid the Motion and payment to the Bondholders, as it has done for years, to determine that Argentina was not entitled to possess the Proceeds. SPA 7-8.

The district court also erroneously relied on *Dussault v. Republic of Argentina*, 616 Fed. Appx. 26, 27-28 (2d Cir. 2015) (summary order). SPA 7. This

Court in *Dussault* found that Argentina was not entitled to possess the funds held in trust at BNYM because the district court had ordered by injunctions BNYM to retain the funds and not to transfer them unless ordered by the court, and it also prohibited Argentina from interfering with BNYM's retention of the funds. *Id*. In *Dussault*, this Court did not find that Argentina did not have an interest in the funds and was not entitled to them because of a trust agreement with BNYM to hold its funds. Instead, this Court's decision suggests that absent the injunctions ordered on BNYM and Argentina, which are now lifted, Argentina could possess the funds as it can now. Because of these errors of fact and law, the district court's finding that Argentina is not entitled to possession the funds should be reversed.

### 3.    The Bondholders' Interests Are Superior to BNYM

Under the two-step analysis of *Beauvais*, should the Court find that Argentina is not entitled to possess the Proceeds, pursuant to CPLR § 5225(b), it can alternatively determine whether the Bondholders have a superior interest in them to BNYM and the Central Bank. As Argentina has publicly touted to the courts and media, the reason for the April 2016 Bond Offering was to raise funds for Argentina to pay its outstanding debts to its bondholders, highlighting their priority interest in the Proceeds. The Bondholders have a superior interest in the Proceeds to BNYM that is only acting as Argentina's agent, pursuant to the Trust Agreement in making payments at Argentina's behest to its creditors, and the

24

Central Bank that is only to receive any amounts not paid to bondholders – who all, including Appellants, have rights under their bonds for *pari passu* or equal payments. A 184-87 (sections (i)-(iii), 6(a)-(b) (only failing full payments to the bondholder beneficiaries are any remaining amounts to be returned to the Central Bank on or before October 22, 2016)).

In *Colonial Inv. Mgmt.*, 2010 WL 4159276, the court found that, although the creditor did not have a priority lien to the funds at the bank, it was first in time in judgment and attempt at execution to another creditor. *Id.* at *3. Here, similarly, although they do not have a priority lien to the Proceeds, the Bondholders would be considered part of the Trust Agreement's designated beneficiary bondholders that BNYM is directed by Argentina to pay the Proceeds to first in order to satisfy Argentina's debt to them because they hold bonds entitling them to equal payment to other bondholders and are currently subject to the Public Offer. A 185-87 (*e.g.* sections (i)-(iii)). By contrast, BNYM is not entitled to payment from the Proceeds, and its interest is only on paper to do Argentina's bidding and to help it avoid executions on the Proceeds by bondholders, like the Motion. *Cf. Beauvais*, 942 F.2d at 841 (remanding the turnover decision to the lower court to determine if agreement between debtor and third party may have given third party the right to apply funds at issue to debtor's unpaid balance for services rendered to it or its customers and if plaintiffs had a superior interest to third party).

25

Again, ignoring the facts, the district court erroneously found that the Bondholders' interest was not superior to BNYM. SPA 8-10. It failed to address the Trust Agreement's own language that BNYM is to hold the Proceeds in trust to be paid to the bondholder "beneficiaries" first, which would include Appellants who hold bonds with the equal rights to other bondholders and are subject to the Public Offer. A 184-87.

It also committed a legal error relying on *Dussault* to find that the Bondholders' interests in the Proceeds are not superior to BNYM. SPA 9-10. However, the district court did not consider that the funds at issue in *Dussault* were not specifically raised for Argentina to pay its debt to its bondholders, including Appellants, and were not designated in a trust agreement between Argentina with BNYM, to be paid first to these bondholder-beneficiaries, of which Appellants would qualify, unlike here. *Cf. Dussault*, 616 Fed. Appx. at 28 (holding that BNYM's interest was superior to appellant's because Argentina was attempting to pay the exchange bondholders, which appellant was not, for whom BNYM acts as trustee). The Bondholders are not asking the Court to engage in subjective assessment of creditors' rights as the district court suggested. SPA 9. Instead, they are only pointing to the purpose of the Proceeds to pay them and the language in the Trust Agreement, agreed to by Argentina, that designates beneficiary bondholders, including Appellants who hold equal rights under their bonds to

26

payments and are subject to the Public Offer, with superior rights to the Proceeds above those of BNYM that is a trustee for them and an agent of Argentina, and the Central Bank. It is clear that the district court erred in applying the law and facts to find that the Bondholders do not have a superior interest to BNYM.[3]

### B.    The Proceeds Are Not Immune under the FSIA

The FSIA provides that property being used for a commercial activity in the U.S. is not immune from execution. 28 U.S.C. § 1610(a). Argentina cannot dispute that it waived its sovereign immunity in the FAA pursuant to which it made its bond offering where Appellants purchased their bonds. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 203 (2d Cir. 2012) (recognizing this waiver). Because of this, its assets that are being used in the U.S. for commercial activity are not immune under the FSIA. Argentina also cannot dispute that the April 2016 Bond Offering occurred in the U.S., through U.S. financial institutions, with its Proceeds

---

[3] The request for discovery, discussed *supra* at pg. 30-33, is emphasized here by the fact that the Central Bank, which is a participant in the multi-billion dollar bond offerings in Argentina, is to receive the Proceeds not paid to bondholders. Because the Central Bank may be acting as an agent or alter-ego of Argentina in order for Argentina to avoid executions and attachments of the Proceeds, like the present Motion, Argentina may be engaging in a fraudulent conveyance to the Central Bank of the remaining Proceeds not paid to satisfy bondholders' debts. *See Dussault*, 616 F. Appx. at 28 (citing N.Y. Debtor and Creditor Law) (superior rights may be found based on a fraudulent conveyance).

received by BNYM in the U.S. that are now being paid to its bondholders to satisfy its debts in the U.S. A 134, 184.

The district court held, contrary to legal authority and facts, that the Proceeds are immune under the FSIA because Argentina is not using them for commercial activity in the U.S. SPA 10-11. The district court incorrectly concluded, on the facts and law, that Argentina did not have an interest in the Proceeds and therefore could not "use" them at all, including for commercial activity in the U.S. *Id.* As discussed *infra* at pg. 16-21, Argentina does have an interest in the Proceeds, and in fact, benefits from the payment of them, through its agent BNYM, at its direction, to its bondholders to satisfy its debts for release of their claims against it. A 184, 186. As detailed in the Purchase Agreement and Trust Agreement, BNYM received the Proceeds for Argentina, Argentina directs BNYM to pay its debts to bondholders for settlement of their claims against it, and it will indemnify BNYM for actions taken on Argentina's behalf. A 134, 184-198.

Furthermore, contrary to the district court's conclusion, binding legal precedent demonstrates that the Proceeds, as part of the April 2016 Bond Offering, and through their payment to satisfy bondholders' debt, are recognized commercial activity in the U.S. that are not immune under the FSIA. The Supreme Court decided this issue in *Weltover*, 504 U.S. 607, holding that Argentina's issuance of "garden-variety debt instruments" that may be held by private parties, are

negotiable, can be traded, promise a future stream of income and can be used to refinance or pay debt fit within the commercial activity exception to immunity under the FSIA. *Id*. at 615-16.[4] This Court also applied *Weltover* to find that when Argentina used an account to purchase scientific equipment, or stated another way to pay its debt for its purchase of equipment, in the U.S., it met the "commercial use" requirement of the FSIA and could not claim sovereign immunity of the funds. *NML Capital, Ltd. v. Republic of Argentina*, 680 F.3d 254, 260 (2d Cir. 2012).

Like the commercial transactions at issue in *Weltover* and *NML Capital*, the Proceeds here were generated as part of the April 2016 Bond Offering, which by definition constitutes commercial activity because it raised funds for Argentina acting as a private party through its debt offering. Furthermore, the payment of the Proceeds to bondholders in order to satisfy Argentina's debt to them is also commercial activity by Argentina, acting as a private entity, paying its debts. The Proceeds are not merely being held by BNYM, as the district court incorrectly concluded. SPA 11. The lower court's decision creates an unworkable standard for

---

[4] This Court also considered the application of *Weltover* in *EM Ltd. v. Republic of Argentina,* 473 F.3d 463 (2d Cir. 2007). In that case, this Court distinguished the commercial transactions in *Weltover* from the payment of debt to the International Monetary Fund, which was particular to sovereigns - not private actors. *Id*. at 481-85. Here, Argentina is acting as a private actor engaging in commercial activity through the debt offering and payment of its debts to bondholders.

courts to determine a certain point in time, on a case by case basis, when the Proceeds change in their "use" from being part of the April 2016 Bond Offering to something else. Regardless, as part of the April 2016 Bond Offering or as being used to pay Argentina's debt to bondholders, the Proceeds use constitutes commercial activity and is not immune under the FSIA from execution.

Instead of following the applicable standard from *Weltover* and *NML Capital*, the district court erroneously relied on *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 131 (2d Cir. 2009), to support its finding that property held by BNYM for later transfer to a state was not being used by the state. SPA 11. However, *Aurelius Capital* involved the legal transfer by legislation of pension funds held by private corporations to a separate government administration. 584 F.3d at 131. This Court noted that those plaintiffs did not argue that the private corporations were acting as alter egos of Argentina and the funds were not being used for anything and only being legal transferred. *Id*. Here by contrast, Appellants argue that Argentina's Proceeds, as part of the April 2016 Bond Offering, were received by BNYM, for Argentina, and are being paid by BNYM, at Argentina's direction, to satisfy Argentina's debts owed to bondholders that constitute commercial activity of a private actor. Therefore, the Proceeds are not immune from execution under the FSIA.

### C.    The District Court Impermissibly Denied Discovery

Both federal and New York state rules allow liberal post-judgment discovery in aid of execution. *Aurelius Capital,* 589 Fed. Appx. at 17 (citing Fed. R. Civ. P. 69 (a)(2) and 26 (b)(1) and N.Y. C.P.L.R. § 5223). Argentina explicitly waived immunity and is liable in the same manner and to the same extent as a private party including regarding discovery. *See NML Capital*, 134 S. Ct. at 2256 (citing *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 203 (2d Cir. 2012) (recognizing Argentina's liability for its waiver of sovereign immunity in its bond offerings at issue here)).

Even if the Court does not find that the Proceeds are subject to execution or turnover or if they are unavailable to satisfy the Judgments because they have been returned to Argentina, this is not determinative of whether Appellants can seek discovery relating to the April 2016 Bond Offering and its Proceeds now being paid to satisfy Argentina's debts to bondholders. The Appellants requested discovery relating to Argentina's capital-raising activities are relevant and reasonably calculated to lead to the attachable assets, whether of the Proceeds or others. In *NML Capital*, the Supreme Court determined that "Argentina's self-serving legal assertion" that its assets are immune under the FSIA did not shield it from discovery, and this same argument must be rejected here. *See* 134 S. Ct. at 2257-58 (holding that the FSIA does not bar discovery of Argentina's assets); *EM*

*Ltd.*, 695 F.3d at 209 ("Whether a particular sovereign asset is immune from attachment must be determined separately under the FSIA, but this determination does not affect discovery."). This Court followed the Supreme Court's dictate in *Aurelius Capital*, 589 Fed. Appx. at 17-18, where it held that "potential immunity of property from attachment does not preclude discovery of that property; indeed, discovery may be necessary for the parties to properly litigate the existence of immunity." *Id.* (citing *NML Capital*, 134 S. Ct. at 2256-58); *see also Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 93 (2d Cir. 2014) (even after finding funds were not attachable, the court reversed and remanded for reconsideration the lower court's decision denying discovery in light of the altered legal landscape under the Supreme Court's decision in *NML*).

If not for the limited time frame to attempt discovery of the Proceeds and April 2016 Bond Offering before Argentina directs that the Proceeds be moved beyond U.S. courts' jurisdiction, the Bondholders would set forth a more formal request. Even so, their limited request for discovery is clearly proper under *NML Capital* and its progeny and should be broadly granted, while Argentina may present any objections to it to the district court. *Aurelius Capital*, 589 Fed. Appx. at 17-18. Even if the Proceeds are unavailable to satisfy the Judgments, the district court erred in denying the discovery request of Argentina's capital raising activities that is reasonably calculated to lead to other attachable assets.

32

Ignoring these practical time constraints, the district court instead improperly criticized their request and prematurely blocked it. SPA 11-12. It failed to apply the standard enunciated in *NML Capital* and *Aurelius Capital*. Instead, it cited an earlier decision, *Rossini v. Republic of Argentina*, 453 Fed. Appx. 22, 24-25 (2d Cir. 2011) (summary order), to support its denial of Appellants' limited request for discovery that it found did not "reasonably relate to the discovery of attachable assets." SPA at 12. By contrast to the denied discovery sought in *Rossini* that did not even concern an asset sought to be attached, but prior bond offerings, Appellants here only request to pursue discovery relating to the April 2016 Bond Offering and its Proceeds held at BNYM being used to pay bondholders. The district court also summarily dismissed Appellants' request stating that it did not need additional information to resolve the Motion. SPA at 11. However, as this Court has found, potential immunity of property does not preclude discovery of that property. *See Aurelius Capital*, 589 Fed. Appx. at 18. Because of its erroneous application of the law, the denial of the Bondholders' discovery request must be overturned.

## CONCLUSION

The district court's decision denying the motion for writ of execution and turnover order against Argentina and BNYM and discovery request should be reversed and the case remanded to the district court.

Dated: August 8, 2016
New York, New York

ANDERSEN SLEATER LLC

*/s/ Jessica J. Sleater*
Jessica J. Sleater
1345 Avenue of the Americas
2nd Floor, Suite 2100
New York, NY 10105
Tel: (212) 878-3697
Email: jessica@andersensleater.com

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,898 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman 14 point.

August 8, 2016                                    */s/ Jessica J. Sleater*
                                                        Jessica J. Sleater
                                                        Attorney for Plaintiffs-Appellants

# SPECIAL APPENDIX

i

# Table of Contents

**Page**

So-Ordered Opinion of the Honorable Thomas P. Griesa,
　　Dated and Filed May 26, 2016, Appealed From .................... SPA-1

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x

MOHAMMAD LADJEVARDIAN, *et al.*       :
                                      :
      Plaintiffs,                  :
                                      :
      v.                           :     06-cv-3276 (TPG)
                                      :
THE REPUBLIC OF ARGENTINA,            :
                                      :
      Defendant.                   :
------------------------------------------------------ x

MICHELE COLELLA and DENISE DUSSAULT,  :
                                      :
      Plaintiffs,                  :
                                      :
      v.                           :     04-cv-2710 (TPG)
                                      :
THE REPUBLIC OF ARGENTINA,            :
                                      :
      Defendant.                   :
------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/26/16

## OPINION

     Plaintiffs, who hold money judgments against the Republic of Argentina, have filed motions for writs of execution and turnover orders directed at Argentine assets purportedly held by two nonparty financial institutions. The court finds that the motions are without merit and must be denied.

### Background

     In the 1990s, the Republic issued bonds pursuant to a Fiscal Agency Agreement ("FAA"). After the Argentine economy collapsed in 2001, the Republic failed to make scheduled payments on the bonds. FAA bondholders

began filing actions in this court seeking money judgments for the outstanding principal and interest.

Because the Republic did not dispute that it had stopped making scheduled payments, FAA bondholders were often successful in obtaining money judgments.  With these judgments in hand, some bondholders tried to execute upon Argentine property as a way to recoup their losses.  These attempts were largely futile.  *See, e.g., EM Ltd. v. Republic of Argentina,* 865 F. Supp. 2d 415, 417 (S.D.N.Y. 2012).

For years the Republic refused to entertain meaningful negotiations.  But after a new administration came to office, the Republic announced a global settlement proposal in February 2016.  Under the supervision of Daniel A. Pollack, the court-appointed Special Master, the new administration also entered into negotiations with many FAA bondholders and began reaching settlement agreements.  After just a few weeks, bondholders owning the vast majority of outstanding claims had agreed to settle, leaving only a few who continued to hold out for something better.

The Republic needed to raise substantial funds to pay the settlements it had reached.  With this court's blessing, the Republic returned to the capital markets after years out in the cold.  *See* Order, *NML Capital, Ltd. v. Republic of Argentina,* No. 08-cv-6978 (S.D.N.Y. Mar. 15, 2016) (approving the settlement payment mechanism).  On April 22, 2016, the Republic effected a major bond issuance.  Through a private placement, seven financial institutions—known as "initial purchasers"—bought new Argentine bonds for resale to their clients.

SPA-3

Deutsche Bank Securities Inc. coordinated this process by collecting funds from each initial purchaser to pay for the bonds.   Ultimately, the issuance raised $9.371 billion.

Shortly before the bond issuance, the Republic entered into a Settlement Trust Agreement that named The Bank of New York Mellon ("BNYM") as Settlement Trustee for a Settlement Trust.   *See* Bresnahan Decl. Ex. C ("Settlement Trust Agreement" or "STA").   For all proceeds paid into the Trust, the Republic irrevocably assigned all rights, title, and interest to BNYM.   STA § 2.   The Trust's principal beneficiaries were a defined list of settling FAA bondholders, but the Settlement Trust Agreement also outlined a contingency plan.   If for any reason BNYM could not distribute all of the proceeds to settling FAA bondholders by October 22, 2016, the surplus would go to Banco Central de la República Argentina ("BCRA") to repay debts the Republic owed to BCRA.   *See* STA § 6(b).

Once Deutsche Bank collected the $9.371 billion in funds from the initial purchasers, it paid $6.251 billion directly to a group of FAA bondholders who had agreed to settle with the Republic prior to February 29, 2016.   Deutsche Bank then paid the balance to the Trust at BNYM.   Meanwhile, the initial purchasers received the bonds, which they could then resell to their clients.

Four days after the bond issuance, the Ladjevardian plaintiffs (06-cv-3276) brought a motion for a writ of execution and turnover order directed at Argentine assets purportedly held by nonparty J.P. Morgan Securities LLC ("JPM").   Three days later, these same Ladjevardian plaintiffs filed an almost-

SPA-4

identical motion, this time directed at nonparty BNYM.  The Colella plaintiffs (04-cv-2710) then filed the same kind of motion directed at BNYM.  Both of these plaintiffs specifically targeted only those "proceeds" from the bond issuance that are "not being used to pay" settlements with other bondholders. *E.g.*, Colella Br. at 3.  All three of the motions are now before the court.

<u>Discussion</u>

Federal Rule of Civil Procedure 69(a) allows federal courts to enforce money judgments by an action that comports with the procedures of the state where the court is located.  Plaintiffs move for turnover orders and writs of execution pursuant to New York Civil Practice Law and Rules ("CPLR") sections 5225(b) and 5230.  The court will consider each of those sections in turn.

**1.  Turnover Orders under CPLR § 5225(b)**

A turnover order under CPLR § 5225(b) allows a judgment creditor to execute upon property that belongs to a judgment debtor but is in the possession of a third party. *See N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 717 F.3d 266, 267 (2d Cir. 2013).  By its express language, § 5225(b) provides for a "two-step analysis" in determining whether the third party must turn over the property to the creditor. *See Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991).

Under the two-step analysis, the court must first find that the debtor "has an interest" in the property the creditor seeks to obtain. *Id.*  If the court makes that finding, it must then make one of two additional findings: it must find *either* that the debtor is entitled to possess the property, *or* that the

creditor's rights to the property are superior to those of the third party.  *Id.* Only after the court makes an appropriate finding under *both* steps may it order the third party to turn over property to the creditor.  *Id.* at 840–41. Implicit in this analysis is that the third party actually has the property the creditor seeks to obtain.

### a.  *The Relevant Property*

As a threshold matter, the third party must hold property of the kind the creditor seeks to obtain.  Here, plaintiffs limit the relevant property to proceeds from the bond issuance not being used to pay settlements with other bondholders.  *E.g.*, Colella Br. at 3.

The record reveals that JPM's only role in the bond issuance was as an initial purchaser of bonds for resale to its clients.  *See, e.g.*, Miguens Decl. ¶¶ 3–5.   JPM simply paid for and received bonds—*it did not obtain any proceeds from the issuance*.  Plaintiffs' reply brief seems to concede as much by implicitly abandoning their request for relief as to property held by JPM.  *See, e.g.*, Colella Reply at 9.   Thus, because JPM never held any of the property targeted by plaintiffs, relief under § 5225(b) is unavailable, and the court need not reach JPM's alternate defense that plaintiffs' service of process was improper.

BNYM, by contrast, admits that it holds proceeds from the bond issuance.  Accordingly, the court will now apply the two-step analysis under CPLR § 5225(b) to those proceeds.

b. *The Republic's Interest in the Property*

As noted above, a creditor seeking to reach property held by a third party must first show that the debtor "has an interest" in that property.   *See EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 476 n.13 (2d Cir. 2007).

Plaintiffs offer no evidence that the Republic has any interest in the proceeds held by BNYM.   This is unsurprising given the Settlement Trust Agreement's plain terms, which show that the Republic retains no interest in proceeds paid into the Trust.   The Republic "irrevocably assigned" to BNYM its "right to receive the full amount" of any proceeds.   STA § 2.   The Republic further agreed that "neither the Republic nor any agency or instrumentality of the Republic shall have any right, title or interest (including, for the avoidance of doubt, proprietary or reversionary interest) of any kind" in the proceeds.   *Id.* § 7.   And the Republic's filings in opposition to these motions again disavow any interest in the proceeds.[1]   Instead of filling the Republic's coffers, then, all proceeds were "held . . . in trust" by BNYM "for the benefit" of certain beneficiaries—none of which is the Republic.   *Id.* §§ 2, 7.

Plaintiffs suggest that the Republic is deceiving its creditors and the court by naming BCRA as a potential beneficiary of the Trust.   To the extent that plaintiffs seek to cut BCRA from the same cloth as the Republic, their

---

[1]   *See also* Bresnahan Decl. Ex. B, at Purchase Agreement § 2(c) ("The Republic hereby irrevocably: . . . transfers and assigns (and grants a first priority security interest in) the Republic's right to receive the payment . . . of the [proceeds] of the Offering"); *id.* Ex. E, at 29 ("All of the Republic's rights, title and interest in the Settlement Amount will be irrevocably assigned, and a first priority security interest will be created in all of the Republic's rights to receive the Settlement Amount, in favor of the settling claimants.").

SPA-7

argument fails.   Under the Settlement Trust Agreement, any proceeds that remain in the Trust after the settling FAA bondholders are paid may ultimately go to BCRA, in its capacity as the Republic's creditor.   But as the Second Circuit has made clear, BCRA is separate from the Republic and should not be treated as if it were the Republic.   *EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78, 99 (2d Cir. 2015).   Thus, the Republic derives no interest in the proceeds merely because BCRA has some residual interest in any surplus from the Trust.

In short, the Republic has no interest whatsoever in the property plaintiffs seek to obtain.   Plaintiffs cannot use § 5225(b) to execute upon the proceeds held by BNYM.

### c.   *The Republic's Entitlement to Possess the Property*

Even if plaintiffs could show that the Republic has an interest in the relevant property, they must still satisfy the second step under § 5225(b).   One way to do so would be to establish that the Republic is entitled to *possess* the proceeds held by BNYM.   *See Beauvais*, 942 F.2d at 841.

As the Second Circuit has already found in a related case, "[f]or this prong to be met, the Republic must be able to retrieve the disputed assets back" from BNYM.   *See Dussault v. Republic of Argentina*, 616 F. App'x 26, 27 (2d Cir. 2015).   Here, the Settlement Trust Agreement ensures that the Republic is never "entitled to the possession" of the proceeds because it "is barred from getting the funds back" from BNYM.   *See id.* at 28.   As discussed

7

above, all proceeds were "irrevocably assigned" to BNYM "upon the closing." STA § 2; *see also id.* § 4.

Moreover, the Settlement Trust Agreement grants BNYM a first priority security interest in those proceeds, and—"for the avoidance of doubt"—the Republic expressly disclaims any "proprietary or reversionary interest" asserted by the Republic or any of its agencies or instrumentalities. *Id.* §§ 2, 7. The Republic can also claim no future right to possess proceeds that will soon be paid to settling FAA bondholders, if indeed those payments have not yet occurred. Even if some proceeds remain after that process ends, the Settlement Trust Agreement irrevocably assigns them to another of the Republic's creditors, BCRA.

In sum, even if the Republic had a theoretical interest in the proceeds, it could not possess them because it could not claw them back from BNYM or the Trust's beneficiaries. This fact serves as an independent bar to relief under § 5225(b).

### d. *Plaintiffs' Comparative Rights to the Property*

An alternate way for plaintiffs to satisfy the second step under § 5225(b) would be to show that their rights to the proceeds are superior to the rights of BNYM. *See Beauvais*, 942 F.2d at 840. Plaintiffs' only argument on this score is that they have money judgments that the Republic has failed to satisfy, whereas BNYM "does not have an interest in the proceeds." *See, e.g.*, Colella Br. at 6–7.

The Second Circuit has already rejected a similar argument made by a plaintiff creditor in a related Argentina case.   In *Dussault v. Republic of Argentina*, the plaintiff argued that she had a superior claim "because she is owed more money, and has been denied payment for longer," than the beneficiaries of the BNYM trust at issue in that case.  616 F. App'x at 28.  But the Court of Appeals found it would be improper to engage in "subjective equitable assessments of the relative fairness of paying one class of creditor or another."  *Id.*  Instead, New York law assesses superiority of rights "based on legal interests in the property."  *Id.*

Just like the plaintiff in *Dussault*, plaintiffs here are unsecured general creditors who cannot claim superiority simply because they hold unsatisfied money judgments.  Not only does BNYM have its own senior security interest in the proceeds, but BNYM has a legal interest in holding the proceeds in trust for beneficiaries who have rights to receive them.  *See* STA §§ 2, 4.  There is no basis to elevate plaintiffs' rights above those of BNYM, let alone those of the Republic's other creditors.   To do so would be to engage in the kind of "subjective equitable assessments" that New York law disdains.  *See Dussault*, 616 F. App'x at 28.

Plaintiffs halfheartedly claim that their rights are superior by suggesting that the Republic may have perpetrated a fraudulent conveyance.  It is true that the Second Circuit in *Dussault* made particular note that a creditor's rights might be superior to a third party's if the debtor fraudulently conveyed the property to the third party.  *Id.*  But here, as in *Dussault*, "the Republic's

9

transfer of funds to [BNYM] was not a fraudulent conveyance, because the Republic was attempting to pay other creditors for whom [BNYM] acts as trustee." *See id.* "At most," then, what the Republic has done here amounts to "a preference among creditors"—which is certainly permissible—and not a fraudulent conveyance. *See id.* at 28; *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005). Plaintiffs come nowhere close to showing fraudulent conveyance under New York law, and they cannot establish superiority of rights merely by insinuating that something sinister might be afoot.

Plaintiffs have failed to establish superior rights to the proceeds. For this additional reason, they cannot obtain relief under § 5225(b).

## 2. Writs of Execution under CPLR § 5230

Plaintiffs also seek a writ of execution under CPLR § 5230, which allows courts to authorize "an execution" on property to satisfy a judgment. An execution is an instrument "delivered to the court's enforcement officer, usually the sheriff, directing the sheriff to levy against any nonexempt property that can be found belonging to the judgment debtor." CPLR Commentaries 5230:1. Like § 5225(b), § 5230 requires a creditor to show that the debtor "has an interest" in the property. CPLR § 5230(a). For the reasons outlined above, the Republic does not have an interest in the proceeds and, accordingly, plaintiffs are not entitled to a writ of execution under CPLR § 5230.

## 3. The Foreign Sovereign Immunities Act

The Republic offers an alternate barrier to the relief plaintiffs seek—the Foreign Sovereign Immunities Act ("FSIA"). Unless an FSIA exception applies, a

foreign state's property in the United States is immune from execution.   28 U.S.C. § 1609.   One such exception is for property that is both located in and "used for a commercial activity in the United States."   28 U.S.C. § 1610(a). Importantly, though, property held by a third party solely for the purpose of later transfer to a foreign state is not being "used" by the state.   *See Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 131 (2d Cir. 2009). Immunity from execution would still apply in such circumstances.

Here, plaintiffs allege in part that BNYM is merely holding proceeds that may ultimately find their way to the Republic, perhaps via BCRA.   Even if that were true, plaintiffs would run headlong into execution immunity under the FSIA because the property they target is not being "used for a commercial activity" by the Republic.   Rather, it is in the hands of a third party, BNYM, and is not being—and in fact *cannot* be—"used" by the Republic at all.   *See infra* Sections 1(b) & (c).   The Republic does not have the "opportunity to use" property that is not "*in the hands of the Republic*," and the FSIA therefore precludes execution on any proceeds held by BNYM.   *See id.* at 131.

### 4. Discovery and a Restraining Order

As an afterthought, plaintiffs request discovery and a restraining order, but only if the court "requires more information to identify specific accounts" that contain the Republic's property in the United States.   *E.g.*, Colella Br. at 9. Because the court does not require that information to resolve these motions, it denies plaintiffs' informal request.   If plaintiffs truly wish to seek discovery and a restraining order, they should do so through the proper procedures rather

SPA-12

than in such a throwaway fashion.  Given what the court has found above, it seems unlikely that such speculative discovery requests would be "reasonably related to the discovery of attachable assets," but certainly plaintiffs' showing so far is inadequate.  *See Rossini v. Republic of Argentina*, 453 F. App'x 22, 24–25 (2d Cir. July 1, 2011) (summary order).

<u>Conclusion</u>

Plaintiffs are part of a steadily shrinking holdout group.  Rather than settle with the Republic, they have chosen to reject the global proposal and seek full satisfaction of their judgments through Rule 69.  Plaintiffs may certainly continue to hold out for a better deal, but the court cannot allow them to execute upon property that is not the Republic's while they do.

For the foregoing reasons, the court denies plaintiffs' motions for writs of execution and turnover orders.


SO ORDERED.

Dated: New York, New York
       May 26, 2016

_____
Thomas P. Griesa
United States District Judge